UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**NAZ, LLC**                                                              **CIVIL ACTION**

**VERSUS**                                                                **NO:    17-2882**

**PHILIPS HEALTHCARE, A DIVISION OF**                 **SECTION: "F" (4)**
**PHILIPS ELECTRONICS NORTH AMERICA**
**CORPORATION**

### ORDER

Before the Court is a **Supplemental Motion for Leave to File Amended Complaint** (**R. Doc. 36**) filed by the Plaintiff Naz, LLC, seeking leave to file its first amended complaint. The motion is opposed. R. Doc. 38. The motion submitted on September 20, 2017, and heard by oral argument that same day. For the following reasons, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.      Background**

This diversity action was filed by the Plaintiff Naz, LLC ("Plaintiff") seeking to recover damages allegedly sustained from the sale of an MRI machine for Plaintiff's use at a medical facility at 2909/2905 Kingman Street, Metairie, Louisiana. R. Doc. 1, pp. 11-12. According to the Plaintiff, the medical facility at 2909 Kingman Street was constructed to expand the existing medical center at 2905 Kingman Street, adding a state-of-the-art neuroscience center and ambulatory surgery center. *Id.* at p. 1. Plaintiff asserts that, critical to this expansion, the neuroscience center was to house an Ingenia 3.0T Omega MRI, manufactured and sold by Philips Healthcare ("Defendant"). *Id.* After extensive research and discussions with various manufacturers of 3.0T MRIs, which included Defendant, Plaintiff alleges that Dr. Morteza Shamsnia ("Dr. Shamsnia"), as principal of Naz, LLC, decided to purchase the Ingenia 3.0T Omega MRI neurological complete package from Defendant. *Id.* at p. 2. Plaintiff contends that

Defendant was aware of the particular purpose for which Dr. Shamsnia and Plaintiff intended to use the machine. *Id.*

In December 2011, relying on these representations, Plaintiff originally signed a quote document, which set forth the price and components, packages, and services Defendant promised to deliver. *Id.* Allegedly, Dr. Shamsnia, on behalf of Naz, LLC, made a counteroffer, adding that the purchase and acceptance of the terms and conditions was contingent upon Defendant providing financing for purchase of the MRI machine. *Id.* According to Plaintiff, issues and disputes regarding the terms of the sale prevented the quote document from being fully executed. *Id.*

Moreover, Plaintiff alleges that Defendant misrepresented to Plaintiff that it had the authority to offer financing terms that would meet its counteroffer. In particular, Plaintiff alleges that it was August 2016 when it was placed in default by Phillips Medical Capital ("PMC"), the alleged financing arm of Defendant, that Defendant made it known that Phillips Healthcare and PMC were wholly separate entities, and PMC had sole control of any financing agreement related to the sale of the MRI machine. *Id.* at pp. 2-3.

In May 2012, Defendant sent another quote to Dr. Shamsnia, which documented effective dates of May 4, 2012, to June 28, 2012. *Id.* at p. 3. According to Plaintiff, Dr. Shamsnia reiterated his approval of the price and/or financing terms at the time, adding additional conditions that any agreement of sale was contingent upon Defendant confirming its authority to provide financing previously requested by Dr. Shamsnia. *Id.* As with the December 2011 quote, the May 2012 was never executed. *Id.*

Due to ongoing communications and negotiations surrounding the terms and conditions of the sale, allegedly, Plaintiff and Defendant agreed that Defendant would deliver the Ingenia MRI package. *Id.* at p. 4. Furthermore, Plaintiff alleges that Dr. Shamsnia, on behalf of Plaintiff, agreed to follow the instructions and recommendations regarding installation and services, which were to be provided by Defendant's experts, engineers, and installation specialists. *Id.* Prior to installation of the MRI

package, the facility and the room that was to house the MRI machine had to be modeled and constructed according to Defendant's experts' plans and specifications. *Id.* Despite having expending costs to prepare the second floor of the facility for the MRI machine, Defendant's informed Dr. Shamsnia that, due to vehicular movement below the medical facility's parking lot, the MRI package would have to be located on the third floor. *Id.* According to Plaintiff, additional costs were incurred to prepare the third floor of the medical facility. *Id.* The MRI machine was installed, and to alleviate any concerns regarding vibration, Defendant allegedly asserted that redesigned, special pads were sufficient to eliminate Plaintiff's vibration concerns. *Id.* at p. 5.

In December 2014, Defendant's experts allegedly represented to Plaintiff that the MRI equipment was properly installed, was fully operational, and could be operated safely and properly for clinical patient use and for its intended purposes. *Id.* at p. 12. As a result, Dr. Shamsnia, on behalf of Plaintiff, began making payments to PMC. *Id.*

On January 12, 2015, Plaintiff's board-certified MRI technician noticed a number of defects with the MRI machine, including improper signals during calibration and gaps and separation of the covers on the MRI unit, and immediately notified Defendant. *Id.* at p. 6. It was revealed that there was a significant shift in the vibration pads from their original location, rendering the MRI machine inoperable. *Id.* The MRI was tendered back to Defendant for modifications and repairs. *Id.* According to Plaintiff, Defendant's engineers' caused an opening in the roof when inspecting the machine, through which water came into the facility after heavy rainfall. *Id.* at p. 7. Plaintiff asserts that it incurred approximately $850,000 in costs to repair the damage done to the facility. *Id.*

Plaintiff alleges that Defendant could not advise Plaintiff on the cause of the problems of the MRI machine. *Id.* As a result, Plaintiff hired its own experts, who determined that the MRI support system was inadequate. *Id.* at p. 8. After being notified of Plaintiff's experts' analysis, Defendant allegedly admitted that the support system was, in fact, inadequate. *Id.* Due to the process of ensuring that the MRI machine operated safely, Plaintiff alleges that the equipment was not re-activated until

3

after April 2016. *Id.* Furthermore, it was not until after April 2016 that Plaintiff discovered it was not provided with the necessary software that it claims should have been installed. *Id.* at p. 9. To date, Plaintiff alleges that the software has yet to be delivered. *Id.* Plaintiff filed the instant lawsuit to recover damages for gross fault, breach of contract and/or agreement, bad faith, failure to make timely delivery, and breach of installation and service agreements. *Id.* at pp. 14-19.

### A. Plaintiff's First Motion for Leave to File Amended Complaint

On August 3, 2017, Plaintiff filed its motion to amend its Complaint. R. Doc. 27. In particular, Plaintiff sought to comply with the Court's July 26, 2017, Order, add Dr. Shamsnia and Advanced Neurodiagnostic Center, Inc. ("Ad Neuro"), as parties-plaintiff, and add a demand for trial by jury. *Id.* at p. 2. Plaintiff states that it seeks to add Dr. Shamsnia and Ad Neuro as parties because Defendant raised the issue through its 12(e) and 12(b)(6) motion, alleging that they were parties to the sale. *Id.* Furthermore, while Plaintiff contends that it was the actual purchaser of the MRI package, it seeks to add Dr. Shamsnia and Ad Neuro because of the relationships between the principals of Naz, LLC, and Ad Neuro and because both entities may have a real interest in the claims and damages sought. *Id.* The Defendant opposed the motion, arguing that Plaintiff's addition of Dr. Shamsnia and Ad Neuro is anything but alternate identities of the original Plaintiff as the collective single alleged "purchaser." R. Doc. 31, p. 2.

On August 28, 2017, the Defendant produced to the Plaintiff a "booking package," which, after inquiry, was described as the quote agreed upon in the financing agreement. Because no signatures were evident from the package, the Defendant provided a complete copy of the documents, noting that the signatures were present. Rather than comply with the Court's Order to file a revised proposed amended complaint (*see* R. Doc. 37), Plaintiff, instead, filed a Supplemental Motion for Leave to File Amended Complaint. R. Doc. 36. As a result, the Court denied as moot Plaintiff's Motion for Leave to File Amended Complaint (R. Doc. 27). R. Doc. 37.

4

### B.     Plaintiff's Supplemental Motion for Leave to File Amended Complaint

At this time, Plaintiff has filed a Supplemental Motion for Leave to File Amended Complaint. R. Doc. 36. Plaintiff not only seeks to amend the parties added to the claim, but also seeks to add claims of fraud, fraudulent inducement, and unfair trade practices against the Defendant. R. Doc. 36-1, p. 5. Plaintiff avers that, recent developments in the case give it just cause to amend the complaint at this time, further reserving its right to file another amended complaint to assert additional causes of action as discovery continues. *Id.* at p. 6.

In response, Defendant first argues that Dr. Shamsnia, as member of Naz, LLC, and owner of Ad Neuro, cannot sue for damages resulting from damages to the LLC's property. R. Doc. 38, p. 2. Furthermore, Defendant argues that Plaintiff's claims of fraud, fraudulent inducement, and unfair trade practices are meritless. *Id.*

## II.    Standard of Review

Generally, Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir.2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue

5

prejudice to the opposing party . . . and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir 2003)).

**III.     Analysis**

Plaintiff has filed a supplemental motion for leave to file an amended complaint. R. Doc. 36. Plaintiff seeks to add Dr. Shamsnia and Ad Neuro as party plaintiffs, arguing that Plaintiff, Dr. Shamsnia, and Ad Neuro have an identity of interest in the MRI at issue and a joint proprietary interest in the purchase of the MRI. R. Doc. 36-1, p. 4. In addition, Plaintiff seeks to add claims of fraud, fraudulent inducement, and unfair trade practice claims, arguing that the "booking package" produced by Defendant reveals that it deliberately withheld material information surrounding the purchase of the Ingenia 3.0T Omega MRI. *Id.* at p. 5. In particular, Plaintiff argues that the "booking packaged" revealed an internal document between Defendant and PMC references that the MRI machine was "sold to" PMC. *Id.* Plaintiff avers that Defendant will use this document to argue that it was not the seller of the MRI, but rather, PMC owned and sold the MRI. *Id.* Plaintiff further contends that Defendant and PMC deliberately withheld this material information to induce Dr. Shamsnia into using PMC to finance the purchase of the MRI. *Id.*

In opposition to the motion, Defendant alleges that Dr. Shamsnia, as a member of Naz, LLC, may not sue for damages resulting from damage to Naz, LLC's property. R. Doc. 38, p. 2. In particular, Defendant argues that adding Dr. Shamsnia, as a Plaintiff, will only confuse the issues of the Court and allow Plaintiff to assert claims that legally do not exist. *Id.* Moreover, Defendant argues that Plaintiff's claims of fraud, fraudulent inducement, and unfair trade practices are meritless. R. Doc. 38, p. 2.

While Plaintiff's motion for leave to amend is timely, leave to amend is "not automatic." *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013). As such, the Court will not grant Plaintiff's motion

merely because the amendment is timely.  "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citation omitted).  In determining the futility of a proposed amendment, the Court must determine whether the plaintiff has pled "enough facts to state a claim of relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal quotations omitted) *In Re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)) (footnote omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where viability of a claim is at least facially possible, futility does not provide grounds for denying an amendment. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 353–54 n.6 (5th Cir. 2011).

The Court shall consider each of Plaintiff's proposed amendments below.

### A.     Ad Neuro

Plaintiff argues that Ad Neuro, along with Naz, LLC, is a closely held entity owned and operated by Dr. Shamsnia and his wife.  Ad Neuro is the operational entity whose employees operate the diagnostic equipment and service and treat the patients who undergo the testing using the MRI machine. R. Doc. 36-1, p. 4.  During oral argument, the Court questioned Plaintiff as to Ad Neuro's interest as a plaintiff in this lawsuit.  Plaintiff asserted that, as the entity who employs the persons operating the MRI, Ad Neuro has an interest in the MRI purchased. R. Doc. 36, p. 4.  In response, Defendant expressly stated that it did not oppose the addition of Ad Neuro as a party plaintiff, indicating that various transaction documents were signed by Ad Neuro, and on some occasions, Naz, LLC, and Ad Neuro were acting on behalf of each other.

The deadline to amend pleadings, according to the Court's Scheduling Order, was September 5, 2017. R. Doc. 28.  Plaintiff filed its motion for leave on September 1, 2017.

7

Further, the Court notes that there is no evidence of "undue delay, bad faith, or dilatory motive on the part of the Plaintiff." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Plaintiff's amendment comes less than five months after filing its original complaint. Further, the Court does not believe the amendment would be futile. *Id.* Considering the foregoing, the Court grants Plaintiff's supplemental motion to amend to add Ad Neuro as a party plaintiff.

### B.       Dr. Morteza Shamsnia

Plaintiff also contends that Dr. Shamsnia has an identity of interest in the equipment purchased and a joint proprietary interest in the purchase of the MRI in question, and thus, should be added as a party plaintiff. R. Doc. 36-1, p. 4. During oral argument, Plaintiff further argued that Dr. Shamsnia should be added as a party plaintiff because he used personal checks to make payments on the MRI machine.

In opposition, Defendant argues that Dr. Shamsnia, as member and owner of Naz, LLC, and Ad Neuro, respectively, may not personally sue for damages resulting from the damages to the limited liability company's property. R. Doc. 38, p. 2.

Pursuant to La. Rev. Stat. § 12:1329, a member of a limited liability company shall have no interest in limited liability company property, as membership interest shall be an incorporeal moveable. Under Louisiana law, there are two kind of persons: natural persons and juridical persons. La. Civ. Code art. 24. A natural person is a human being; a juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. *Id.* The personality of a juridical person is distinct from that of its members. *Id.* A limited liability company is a juridical person, and thus, a limited liability company and its members are wholly separate and distinct persons. *Am. Rebel Arms, LLC v. New Orleans Hamburger & Seafood Co.*, 186 So. 3d 1220, 1224 (La. App. 5 Cir. 2016) (citing *Ogea v. Merritt*, 130 So. 3d 888, 894 (La. 2013).

It is this distinction that serves the primary purpose of a limited liability company: to protect LLC's members from personal liability for the debts of the LLC, except in limited circumstances. *Id.*

In essence, "no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." La. Rev. Stat. § 12:1320(B). On the other hand, members have no interest in a limited liability company's property. La. Rev. Stat. § 12:1329. Consequently, members of a limited liability company have no right to sue personally for damages to limited liability company property. *Zeigler v. Hous. Auth. Of New Orleans*, 118 So. 3d 442, 450 (La. App. 4 Cir. 2013).

It follows that a limited liability company does not have a right to sue for damages based on the personal injuries of one of its members. *See Hinchman v. Oubre*, 445 So. 2d 1313 (La. App. 5 Cir. 1984) (finding that since corporation suffered damages to corporate property, individual had no personal right of action; "A person who conducts business in corporate form and reaps the benefits of incorporation cannot sue individually for damages incurred by the corporation."); *see also Kelly v. Porter, Inc.*, 687 F. Supp. 2d 632, 636 (E.D. La. 2010) ("Section 12:1329 . . . controls the Court's analysis as to the ownership interest of a member of a [limited] liability company. And that statute is clear: A member of a limited liability company has no interest in the limited liability company's property. Accordingly, because Maverick owns the vessel, Kelly has no ownership interest in it and has no right of action to sue defendants to recover damages in his individual capacity.").

The Court was not persuaded by Plaintiff's argument that Dr. Shamsnia has personal capacity to sue because he used his personal checks to make payments on the MRI machine, especially considering Plaintiff repeatedly alleged in its amended complaint that Dr. Shamsnia was acting on behalf of Naz, LLC, and Ad Neuro throughout the transaction. *See* R. Doc. 36-5.

Considering the applicable law and facts, the Court finds that Dr. Shamsnia has no standing to personally sue and recover damages for injury suffered by Naz, LLC, and Ad Neuro, making Plaintiff's amendment futile. As such, the Court denies Plaintiff's supplemental motion to amend to add Dr. Shamsnia, in his personal capacity, as a party plaintiff.

### C. Plaintiff's Fraud, Fraudulent Inducement, and Unfair Trade Practices Claims

Plaintiff alleges that the Defendant committed acts of fraud, fraudulent inducement, and unfair trade practices for its failure to disclose its relationship with PMC. R. Doc. 36-5, p. 23. In addition, Plaintiff argues that Defendant did not disclose that the MRI machine was allegedly sold by Defendant to PMC and then allegedly sold or leased to Plaintiff. *Id.* Plaintiff contends that Defendant withheld this "material" information in order to induce Dr. Shamsnia into using PMC to finance the purchase of the MRI machine. R. Doc. 36-1, p. 5.

In contrast, Defendant argues that Plaintiff's fraud, fraudulent inducement, and unfair trade practices claims have no merit. R. Doc. 38, p. 2. In support, Defendant provides a Sub-Lease Agreement, entered into between Naz, LLC, and Ad Neuro, which indicates that Naz, LLC, entered into a Master Lease Agreement with PMC for the lease of the MRI machine. R. Doc. 38-1. Defendant also provided a Secured Promissory Note and Agreement ("Promissory Note"), where Naz, LLC, authorizes PMC to pay the manufacturer, supplier, or contractor for the MRI machine. R. Doc. 38-2.

#### i. Fraud and Fraudulent Inducement Claims

Fraud, under Louisiana law, entails a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. In Louisiana, the elements of a claim for intentional misrepresentation and a claim for fraudulent inducement are the same: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Davis v. Karl*, Civil Action No. 10-875, 2010 WL 3312587, at *3 (E.D. La. Aug. 19, 2010) (Africk, J.) (citing *Kadlec Med. Ctr. v. Lakeview Anesthesia Ass'n*, 527 F.3d 412, 418 (5th Cir. 2008) (internal emphasis omitted) (stating the elements of a claim for intentional misrepresentation)); *see Boudreaux v. Shell Oil Co.*, Civil Action No. 13-4762, 2014 WL 4072145, at *1 (E.D. La. Aug. 18, 2014) (Milazzo, J.) (stating the elements of a Louisiana fraud claim and intentional misrepresentation as the same); *see also Henry v. Cisco Sys., Inc.*, 106 F. App'x 235, 239 (5th Cir. 2004) (stating the elements of a claim for fraudulent

10

inducement). "To prove fraud, a party must show an intent to defraud and actual or potential loss or damages." *Pellerin Const., Inc. v. Witco Corp.*, F. Supp. 2d 568, 580 (E.D. La. 2001).

Federal Rule of Civil Procedure 9(b) requires "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," including "time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). State-law fraud claims are also subject to this requirement. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

"Fraud by silence . . .'is, by its very nature, difficult to plead with particularity.'" *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993) (Clement, J.) (quoting *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988)); *Sheppard v. Liberty Mutual Ins. Co.*, No. 16-2401, 2016 WL 6807400, at *3 (E.D. La. Nov. 17, 2016) (Vance, J.). "[A claimant] alleging fraud by silence should be able to allege the following with reasonable particularity: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information." *Chrysler Credit Corp.*, 824 F. Supp. at 598.

Additionally, "Louisiana courts have 'tended to impose a duty [to speak] when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed.'" *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 401 (E.D. La. Oct. 7, 2016) (quoting *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (La. 1990)). The existence of a duty to disclose is a legal question, and the Court considers: "whether the obligation is being imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed." *Id.* at 401-02.

Plaintiff has alleged that the Defendant withheld information that it and PMC were wholly separate entities, and further, that the MRI machine was to be sold by Defendant to PMC, and then sold or leased to Plaintiff by PMC, arguing that the Defendant's omission induced Dr. Shamsnia to enter into a purchase agreement with Defendant for the purchase of the MRI machine, as well as induced Dr. Shamsnia to enter into a financing agreement with PMC. R. Doc. 36-5, pp. 23-24.

First, the Court notes that Plaintiff fails to show how Defendant's alleged omission caused injury or any disadvantage. During oral argument, Plaintiff argued that Defendant withheld the true identity of PMC so that it (Defendant) can later argue the defense that Plaintiff has no claim because Plaintiff signed waivers of liability and warranty with PMC. The Court was not persuaded by this argument, mainly because the Promissory Note provided by Defendant (R. Doc. 38-2) only speaks to financing terms. The Promissory Note mentions nothing about waivers of liability or warranty. Further, the Court was skeptical regarding Plaintiff's claim that it was harmed by the revelation of the Defendant selling the MRI machine to PMC because the Promissory Note indicates that PMC has a security interest in the Collateral, i.e., the MRI machine. *Id.* Based on these facts, Plaintiff failed to convince the Court that it had a plausible claim for fraud or fraudulent inducement.

Further, the Court finds that Plaintiff cannot claim fraud simply because it was confused as to which entity was the seller or the financer. Plaintiff must allege facts, with particularity, showing that the Defendant intentionally meant to defraud, which it fails to do in its amended complaint.

Therefore, Plaintiff does not allege sufficient facts to make a plausible claim for fraud or fraudulent inducement, making its claims futile. As such, the Court denies Plaintiff's supplemental motion to amend to add claims of fraud and fraudulent inducement.

### ii. Unfair Trade Practices

The Louisiana Unfair Trade Practices Act ("LUTPA") governs Plaintiff's claim of unfair trade practices. La. Rev. Stat. § 51:1401, *et seq.* Under LUTPA, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

La. Rev. Stat. § 51:1405(A). LUPTA provides a means of recovery for "any person who suffers any ascertainable loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by [Revised Statute] 51:4105." La. Rev. Stat. § 51:1409(A). There is a one year prescription period to bring an action under LUTPA, commencing from the time of the transaction or act which gave rise to the right of action. La. Rev. Stat. § 51:1409(E).

A successful LUTPA claim requires a showing that the defendant engaged in conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie*, 35 So. 3d at 1059 (internal quotations omitted). "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (citing *Marshall v. Citicorp*, 601 So. 2d 669, 670 (La. App. 5 Cir. 1992). Furthermore, LUTPA does not prohibit "sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Id.* The range of prohibited practices under LUTPA is extremely low, and thus, LUTPA actions require a case-by-case analysis to determine whether the subject conduct is a violation of the statute. *Id.* at 1422.

Plaintiff has based its LUTPA claim on the same allegations as its fraud and fraudulent inducement claims. Finding that Plaintiff does not allege sufficient facts for fraud or fraudulent inducement claims, the Court finds that Plaintiff also does not allege sufficient facts for a LUTPA claim, making its LUTPA claim futile. As such, the Court denies Plaintiff's motion to amend to add the claim of unfair trade practices.

IV. <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that Plaintiff's **Supplemental Motion for Leave to File Amended Complaint (R. Doc. 36)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS GRANTED** to the extent that Plaintiff seeks to add Advanced Neurodiagnostic Center, Inc., as a party plaintiff.

**IT IS DENIED** to the extent Plaintiff seeks to add Dr. Morteza Shamsnia, in his personal capacity, as a party plaintiff.

**IT IS DENIED** to the extent Plaintiff seeks to add fraud, fraudulent inducement, and unfair trade practices claims against Defendant.

**IT IS FURTHER ORDERED** that Plaintiff shall file into the record an amended complaint consistent with this Order **no later than (7) days from the date of this Order**.

New Orleans, Louisiana, this 26th day of October 2017.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**