UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NAZ, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-02882** |
| **PHILIPS HEALTHCARE** | **SECTION: "F" (4)** |

### ORDER

Before the Court is a **Motion for Order Overruling Plaintiff's Objections to Philips Conducting an Ex Parte Interview and Deposition of Plaintiff's Former Employees and Overruling Plaintiff's Objections Related to Privilege Testimony for a Witness (R. Doc. 78)** filed by the Defendant. The motion is opposed. R. Doc. 79. Oral argument was heard on February 28, 2018.

### I.  Background

The instant litigation arises from the purchase of allegedly faulty MRI equipment by a medical facility, the manufacturer's allegedly shoddy installation and service of the MRI equipment, as well as the failure to provide the purchaser with the hardware and software components that should have been delivered when the MRI equipment was installed. Plaintiffs in the action are the owner and operational entity of a medical facility who treat patients who undergo diagnostic testing. The principal of the Plaintiff is Dr. Morteza Shamsnia, who sought to purchase an Ingenia 3.0T Omega MRI and eventually decided to purchase the machine from defendant Philips Healthcare.

Plaintiffs allege that Philips marketed its product with promises and representations that the MRI package was suited to achieve the purposes of Dr. Shamsnia. The parties negotiated in an attempt to reach an agreement as to the sale terms and conditions as well as the services, instructions, and recommendations by Philips. Philips delivered the MRI prior to the completion of the negotiations and the Plaintiffs agreed to follow the recommendation of the experts, engineers, and installers.

On December 22, 2014, Plaintiffs state that they were informed by Philips that the machine was safe for patient use and began using it believing it to be safe. On January 13, 2015, it was discovered that the MRI machine had moved several inches and Philips engineers ordered a "de-energizing" of the MRI which involved the release of helium through a vent in the roof. However, two days later it was discovered that rainfall had entered the opening in the roof due to the carelessly executed quenching process of the MRI, which caused the Plaintiffs to pay $850,000 to repair the damage to the building. Plaintiffs allege they spent more time and money to repair the problems caused by Philips and the MRI equipment was not activated until April 2016. During this time the Plaintiffs discovered the computer software and hardware that was central to the agreement to purchase the machine from Philips was not installed. After being unable to resolve their difference the Plaintiffs filed the instant suit asserting claims of gross fault and breach of contract claims and seeking damages including loss of business, profits, costs, expenses, attorney's fees, penalties, and punitive damages.

The instant motion was filed by Philips seeking an order from the Court authorizing Philips to conduct ex parte interviews the with Plaintiff's former employee, Megan Verdun ("Verdun"), or alternatively an order allowing Philips to conduct the deposition of Plaintiff's former employee overruling anticipated objections as to any subject matter of Verdun's testimony arising from conversations with Plaintiff's counsel. R. Doc. 78. Philips states that Verdun is a former employee of the Plaintiff who was hired in her capacity as an MRI technician by Philips. Philips argues that: (1) the Louisiana Code of Professional Conduct allows them to conduct an ex parte interview with an opposing party's former employee; and (2) the jurisprudence establishes that ex parte interviews with former employees are not prohibited. R. Doc. 78-1.

The motion is opposed. R. Doc. 79. Plaintiff argue that Verdun was involved in communications and document gathering in anticipation of litigation after the lawsuit was filed and

worked with the expert retained by NAZ and Ad Neuro. R. Doc. 79, p. 2. Plaintiffs argue that Verdun is an insider and is aware of the litigation plan, assisted in the investigation, and was engaged in discussions with Plaintiff's counsel. Further, they state that Philips should respond to discovery requests with respect to Philips and Verdun to assist in evaluation of the motion. Further they argue that: (1) the situation requires greater scrutiny than the decisions cited by Philips; (2) the Plaintiffs' confidential, attorney-client and work-product privileged information must be protected. R. Doc. 79, pp. 3-8.

## II.    Law and Analysis

The Court initially notes that the specific facts of this situation appears to be a matter of first impression. Megan Verdun was originally an employee of the Plaintiffs. She began her employment with Plaintiff Ad Neuro in July 2015 and ended her employment with that Plaintiff on December 13, 2017. Verdun was employed as an MRI technician during that time period. Litigation began in this case in April 4, 2017. Verdun left her employment with the Plaintiffs on December 13, 2017 and was apparently hired by Philips, the Defendant. Counsel for Philips learned that Verdun had become an employee of Philips and sent a letter to Plaintiff's counsel on January 12, 2018 notifying them of this. Philips's counsel stated they intended to conduct an interview with Verdun as she was no longer Plaintiffs' employee, but they had not contacted her yet and offered an opportunity to express objections, which necessitated the current motion practice. As of the date of the hearing on this matter Verdun was therefore a *former employee* of the Plaintiffs in the case and a *current employee* of the Defendant.

The ethical rule placed at issue in the present motion is Louisiana Rule of Professional Conduct 4.2. The rule states:

> Unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a lawyer in representing a client shall not communicate about the subject of the representation with:

3

> (a) a person the lawyer knows to be represented by another lawyer in the matter; or
> (b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and
>> (1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter;
>> (2) who has the authority to obligate the organization with respect to the matter; or
>> (3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

The purpose underlying the Rule is to prohibit the disclosure of attorney/client communications, and to protect a party from "liability-creating" statements elicited by a skilled opposing attorney. *Jenkins v. Wal–Mart Stores, Inc.*, 956 F.Supp. 695, 696 (W.D. La. 1997). It is clear that federal courts in Louisiana have consistently found that Rule 4.2 does not prohibit ex parte communications with former employees. *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 1998 WL 186705 (E.D. La. 1998); *Barron Builders & Mgmt. Co.*, 1997 WL 685352, *4 (E.D. La. 1997); *Jenkins v. Wal–Mart Stores, Inc.*, 1997 WL 87617, at *2 (W.D. La. 1997); *Lirette v. Delchamps Inc.*, 1996 WL 267991, at *2 (E.D. La. 1996); *In re Torch, Inc.*, 1996 WL 185765, at *4 (E.D. La. 1996); *Seitel Geophysical, Inc. v. Greenhill Petroleum Corp.*, 1995 WL 686754, at *3 (E.D. La. 1995); *In re Bank of Louisiana/Kenwin Shops Inc., Contract Litigation*, 1998 WL 788776 (E.D. La. 1998); *Schmidt v. Gregorio*, 25,305 (La. App. 2 Cir. 10/27/93).

The concern with ex parte contacts, however, relates to the potential disclosure of attorney-client privilege or other privleged information that the former employee was privy to. *See Butler v. Exxon Mobil Refining and Supply Co.*, No. 07-386-C-M2, 2008 WL 11351509 (M.D. La. July 22, 2008); *Jenkins v. Wal–Mart Stores, Inc.*, 1997 WL 87617, at *2 (W.D. La. 1997); *In re Torch*, C.A. No. 94–2300, 1996 WL 185765 (E.D.La. Apr. 16, 1996).

Philips relies on both Rule 4.2 and the case law stemming from it with respect to ex parte interviews of former employees to argue that it should be able to speak to Verdun, who is now their employee. Philips seek an order allowing an ex parte interview and a ruling establishing that during

Verdun's deposition any testimony of her firsthand knowledge is not protected by any privilege or doctrine. R. Doc. 78-1, p. 10.

Plaintiffs argue that they have just recently found out about Verdun's employment with Philips and state that during the time she was employed by Ad Neuro she was instructed not to talk to Philips and that discussions with Dr. Shamsnia were made with the expectation of privacy and confidentiality. R. Doc. 79. Further, Plaintiffs argue that Verdun was relied on as part of the litigation team who reviewed documents and assisted in the analysis of issues, which they state would not have happened if they knew Verdun was going to take employment with Philips. Further, Plaintiffs contend that Verdun became familiar with the litigation plan and the investigation and problems of the MRI machine. R. Doc. 79, p. 2.

Plaintiffs contend that Philips communicated with Verdun while she was still employed with them and have propounded discovery on Philips to determine the full extent of the communications between Philips and Verdun. R. Doc. 79, p. 3. Plaintiffs argue that their confidential, attorney-client, and work product privileged information must be protected because Verdun was part of the litigation team, involved with discussions that related to strategy, and worked with experts retained by the Plaintiffs. They state this makes her more akin to a "consulting expert" and Philips's hiring her does not remove that status. Plaintiffs suggest that a practical solution would be a deposition, with an order that no ex parte communications are allowed, and a list or limit on the inquiries to Verdun in the areas of: (1) Statements by and communications with Dr. Shamsnia after litigation was anticipated regarding facts, documents, or information about the disputes that lead to the investigation; (2) litigation strategies and information that Verdun was privy to while employed; and (3) work performed by Verdun in association with investigations and work performed or to be performed by Plaintiffs' experts. R. Doc. 79, pp. 4-8.

5

In evaluating Verdun's employment, the Court finds that she was employed by Ad Neuro as an MRI technician. However, at this time she is no linger and employed by the Plaintiffs and is therefore a former employee. Nothing in her title and no argument presented during oral argument indicated that Verdun was somehow in a leadership position within the organization. Further, apart from Plaintiffs argument that she assisted in document gathering and was present during an experts visit there is nothing that indicates she supervised, directed, or regularly consulted counsel in this matter.

The Court, in its review of the relevant case law, was unable to find a case that dealt with an employee of one party leaving their employment, becoming employed by the opposing party, and that opposing party seeking to conduct an ex parte interview of that employee regarding the litigation. While the Court notes these distinguishing features, the case law with respect to ex parte interviews of former employees is clear, these interviews are not forbidden. *See Butler v. Exxon Mobil Refining and Supply Co.*, No. 07-386-C-M2, 2008 WL 11351509 (M.D. La. July 22, 2008); *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 1998 WL 186705 (E.D. La. 1998) *Jenkins v. Wal–Mart Stores, Inc.*, 1997 WL 87617, at *2 (W.D. La. 1997); *In re Torch,* C.A. No. 94–2300, 1996 WL 185765 (E.D. La. Apr. 16, 1996). The Court, therefore, finds that the motion should be granted with some explicit limitations in order protect potentially privileged information.

Both during oral argument and within the opposition brief, the Court was informed by Plaintiffs' counsel that Verdun assisted in the gathering of documents for discovery in the instant litigation. R. Doc. 79, p. 5. In order to be sensitive to potentially privileged information the Court orders that there will no discussion with respect to Verdun's role or interpretation of instructions given to her in regards to the gathering of documents for discovery production.

The Court was also made aware of a November 2017 "service call" in which one of Plaintiffs' experts was present, along with Verdun, Plaintiffs' counsel, and Dr. Shamsnia. Based on the

representations and conversations that Verdun may have been included in or overheard at that specific event the Court finds it appropriate to not allow inquiry into that "service call" during the ex parte interview.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion for Order Overruling Plaintiff's Objections to Philips Conducting an Ex Parte Interview and Deposition of Plaintiff's Former Employees and Overruling Plaintiff's Objections Related to Privilege Testimony for a Witness (R. Doc. 78)** is **GRANTED** to the extent that the Court finds that the Defendant may conduct an ex parte interview of Megan Verdun. However, the Defendant shall not inquire into Verdun's role or interpretation of instructions given to her in regards to the gathering of documents for discovery production or inquiry into "service call" which occurred in November of 2017

New Orleans, Louisiana, this 19th day of March 2018.

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**