**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NAZ, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:    17-02882** |
| **PHILIPS HEALTHCARE** | **SECTION: "F" (4)** |

## ORDER

Before the Court is a **Motion for Leave to File Amended Complaint (R. Doc. 101)** filed by

the Plaintiffs. The motion is opposed. R. Doc. 104. Oral argument was heard on June 20, 2018.

## I.    Background

The instant litigation arises from the purchase of allegedly faulty MRI equipment by a medical

facility, the manufacturer's allegedly shoddy installation and service of the MRI equipment, and the

failure to provide the purchaser with the hardware and software components that should have been

delivered when the MRI equipment was installed. Plaintiffs in the action are the owner and

operational entity of a medical facility who treat patients who undergo diagnostic testing. The

principal of the Plaintiff is Dr. Morteza Shamsnia, who sought to purchase an Ingenia 3.0T Omega

MRI and eventually decided to purchase the machine from defendant Philips Healthcare.

Plaintiffs allege that Philips marketed its product with promises and representations that the

MRI package was suited to achieve the purposes of Dr. Shamsnia. The parties negotiated in an attempt

to reach an agreement as to the sale terms and conditions as well as the services, instructions, and

recommendations by Philips. Philips delivered the MRI prior to the completion of the negotiations

and the Plaintiffs agreed to follow the recommendation of the experts, engineers, and installers.

On December 22, 2014, Plaintiffs state that they were informed by Philips that the machine

was safe for patient use and began using it believing it to be safe. On January 13, 2015, it was

discovered that the MRI machine had moved several inches and Philips engineers ordered a "de-

energizing" of the MRI which involved the release of helium through a vent in the roof. However, two days later it was discovered that rainfall had entered the opening in the roof due to the carelessly executed quenching process of the MRI, which caused the Plaintiffs to pay $850,000 to repair the damage to the building. Plaintiffs allege they spent more time and money to repair the problems caused by Philips and the MRI equipment was not activated until April 2016. During this time the Plaintiffs discovered the computer software and hardware that was central to the agreement to purchase the machine from Philips was not installed. After being unable to resolve their difference the Plaintiffs filed the instant suit asserting claims of gross fault and breach of contract.

The instant motion before the Court was filed by the Plaintiffs, who seek leave to amend the complaint to add causes of action for fraud and violation of Louisiana Unfair Trade Practices Act. R. Doc. 101. They state that they seek to file the Second Amended Complaint in accordance with the Court's scheduling order and Federal Rule of Civil Procedure 15 because discovery has revealed information to support these claims.

The motion is opposed. R. Doc. 104. Defendant argues that this is the fourth attempt to amend the complaint and Plaintiffs once again seek to add a LUTPA claim, a claim which the Court denied leave to amend to add previously. It argues that neither documents or law support the Plaintiffs' claims and the claims could not survive a 12(b)(6) motion. Further, the Defendant argues that this amended complaint is based on documentation produced in 2017 and Plaintiffs should have asserted any allegations then. Instead, these allegations are an attempt to "recapture" prior fraud and LUTPA claims the court summarily dismissed so that Plaintiffs can pursue punitive damages that were also dismissed by Judge Feldman. It argues the motion is without substantial reason, dilatory, may unduly burden the proceedings, and constitutes an attempt to cure otherwise disallowed claims.

## II.    **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n.,* 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994).

## III.    **Analysis**

At hearing on the motion, Plaintiffs argued that Dr. Shamsnia and the Defendant engaged in a day long negotiation and agreed to the MRI and specific items in the package and signed the specific signature page of the quote, Revision 10. They further argue that on May 14, 2012, Defendant then sent Dr. Shamsnia a new quote with items removed and under a different revision number—Revision 12—sent this information to Dr. Shamsnia while he was traveling and asked him to sign and send it back. Plaintiffs indicate to the Court that at no time did Defendant inform Dr. Shamsnia that certain items were removed from the package. Further, they argued that it was very difficult to compare the

two documents and determine what the differences were between Revision 10 and Revision 12. Plaintiffs argue at no point were the differences in Revision 10 and 12 explained to Dr. Shamsnia and that Revision 12 was never fully signed. Plaintiffs argue that Dr. Shamsnia was traveling to Iran at the time he received Revision 12, a fifty page document, and without information as to what was removed he would be unable to determine any differences.

In opposition, Defendant argues that the amendment here is futile. They state that Dr. Shamsnia not only received the entirety of Revision 12, but that he clearly signed Revision 12. Defendant argues that a person who signs a written instrument cannot avoid its obligations by stating they didn't understand it or that it was not explained. Defendant argues that La. C.C. art. 1954 states that fraud does not vitiate consent when the party against whom the fraud is directed could have ascertained the truth without inconvenience, difficulty, or special skill. Defendant argues that Dr. Shamsnia was not provided a time limit or deadline as to when he was required to sign Revision 12 and that he took four days to sign it. According to the Defendant both the fraud claim and LUTPA claim are fatally deficient based solely on the facts contained in the proposed amended complaint. It further argues that the change from Revision 10 to 12 was actually a counter offer as Dr. Shamsnia wanted a specific interest rate, and in order to obtain the sale, three items[1] had to be removed from the package and that Revision 12 was provided to Dr. Shamsnia in full.

In reply, Plaintiffs argue that under Louisiana law there is a duty to speak when the circumstances are such that a failure to disclose would violate a standard requiring conformity to what the ordinary, ethical person would have had to disclose. In this matter, Plaintiffs argue the ordinary, ethical person would not remove items from an MRI package and not tell the customer and sell it to him at the same price.

---

[1]The three items that were removed from the earlier contract were (1) extended workstation, (2) on site technician training, (3) computer software.

Federal Rule of Civil Procedure 9(b) requires "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," including "time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). State-law fraud claims are also subject to this requirement. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

Fraud, under Louisiana law, entails a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953.   In Louisiana, the elements of a claim for intentional misrepresentation and a claim for fraudulent inducement are the same: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Davis v. Karl*, Civil Action No. 10-875, 2010 WL 3312587, at *3 (E.D. La. Aug. 19, 2010) (Africk, J.) (citing *Kadlec Med. Ctr. v. Lakeview Anesthesia Ass'n*, 527 F.3d 412, 418 (5th Cir. 2008) (internal emphasis omitted) (stating the elements of a claim for intentional misrepresentation)); *see Boudreaux v. Shell Oil Co.*, Civil Action No. 13-4762, 2014 WL 4072145, at *1 (E.D. La. Aug. 18, 2014) (Milazzo, J.) (stating the elements of a Louisiana fraud claim and intentional misrepresentation as the same); *see also Henry v. Cisco Sys., Inc.*, 106 F. App'x 235, 239 (5th Cir. 2004) (stating the elements of a claim for fraudulent inducement).   "To prove fraud, a party must show an intent to defraud and actual or potential loss or damages." *Pellerin Const., Inc. v. Witco Corp.*, F. Supp. 2d 568, 580 (E.D. La. 2001).

"Fraud by silence . . .'is, by its very nature, difficult to plead with particularity.'" *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993) (Clement, J.) (quoting *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988)); *Sheppard v. Liberty Mutual Ins. Co., No. 16-2401*, 2016 WL 6807400, at *3 (E.D. La. Nov. 17, 2016) (Vance, J.).   "[A claimant]

alleging fraud by silence should be able to allege the following with reasonable particularity: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information." *Chrysler Credit Corp.*, 824 F. Supp. at 598.

Additionally, "Louisiana courts have 'tended to impose a duty [to speak] when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed.'" *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 401 (E.D. La. Oct. 7, 2016) (quoting *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (La. 1990)). The existence of a duty to disclose is a legal question, and the Court considers: "whether the obligation is being imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed." *Id.* at 401-02.

The Louisiana Unfair Trade Practices Act ("LUTPA") governs Plaintiff's claim of unfair trade practices. La. Rev. Stat. § 51:1401, et seq. Under LUTPA, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. La. Rev. Stat. § 51:1405(A). LUTPA provides a means of recovery for "any person who suffers any ascertainable loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by [Revised Statute] 51:4105." La. Rev. Stat. § 51:1409(A). There is a one year prescription period to bring an action under LUTPA, commencing from the time of the transaction or act which gave rise to the right of action. La. Rev. Stat. § 51:1409(E).

A successful LUTPA claim requires a showing that the defendant engaged in conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or

substantially injurious." *Cheramie*, 35 So.3d at 1059 (internal quotations omitted).  "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (*citing Marshall v. Citicorp*, 601 So. 2d 669, 670 (La. App. 5 Cir. 1992).  Furthermore, LUTPA does not prohibit "sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Id.*  The range of prohibited practices under LUTPA is extremely low, and thus, LUTPA actions require a case-by-case analysis to determine whether the subject conduct is a violation of the statute. *Id.* at 1422.

First, upon questioning the Plaintiff concedes that while traveling Dr. Shamsnia would have access to the previous quote, Revision 10, in addition to Revision 12 such that he would have been able to compare the two. Second, Plaintiffs at the hearing conceded that the information contained in Revision 12 as opposed to Revision 10 was not withheld from the Dr. Shamsnia as both quotes were provided in full. Third, there is no indication that any deadline was imposed on Dr. Shamsnia requiring him to sign by a specific date. While he may have been traveling to Iran, there is no indication that he was required to sign a document without being able to thoroughly review it. As such, based on the proposed pleading and argument presented to the Court, Revision 12 was disclosed and Revision 12 did not contain certain items that Revision 10 had included. However, the entirety of that new revision was provided such that any differences could be compared.

Plaintiff specifically allege in their proposed amended complaint that Defendant deliberately withheld material information and intentionally attempted to defraud Plaintiff by silence. As discussed above, fraud by silence requires that information be withheld. However, Plaintiffs conceded that Dr. Shamsnia was provided in full both Revision 10 and Revision 12. They did not contend that he was unable to review the entirety of Revision 12 or that it was withheld from Dr. Shamsnia.

Further, LUTPA requires fraud, misrepresentation, deception, and similar conduct and not mere negligence. However, once again the facts conceded by Plaintiff indicate that the differences

between Revision 10 and 12 were available to Dr. Shamsnia had he attempted to compare the two. As a result, all facts were disclosed, and Dr. Shamsnia had the opportunity to compare the Revisions at issue here.

The Court, therefore, finds that the motion to amend is denied as it is facially futile based on the proposed pleading and argument presented to the Court.

## IV.    <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the Plaintiffs' **Motion for Leave to File Amended Complaint (R. Doc. 101)** is **DENIED.**

New Orleans, Louisiana, this 28<u>th</u> day of August 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**